## MUNRO v. HILL.

1. The payee of a sealed note assigned it when past due, and under seal guaranteed "the payment of the same without demand or notice of non-payment by the makers." *Held*, that the liability of the guarantor to the assignee was primary, and that the guarantor was not discharged by want of due diligence on the part of the assignee in pursuing the original obligors.

2. The guaranty having been given prior to the code, action thereon was not barred in four years, as under the former system of pleading the action would have been debt on specialty and not covenant.

3. A question as to the proper form of a judgment cannot be considered in this court until it has been passed upon on Circuit.

Before WITHERSPOON, J., Union, October, 1885.

The opinion states the case.

*Mr. J. C. Wallace*, for appellant.

*Mr. J. H. Rion*, contra.

August 10, 1886. The opinion of the court was delivered by MR. JUSTICE McGOWAN. This was an action commenced in September, 1884, by the plaintiff as administrator of W. J. Keenan, deceased, against John T. Hill as surviving administrator of Clough S. Meng, deceased, upon the following guaranty of the intestate Meng: "Union, S. C., February 4, 1861. On the first day of January next, we, or either of us, do promise to pay C. S. Meng, or bearer, one hundred dollars, with interest from date, value received. Witness our hands and seals. (Signed) W. E. St. Clair, [L. S.], J. W. Hughes, [L. S.]" Endorsed : "I assign to William J. Keenan the within note and interest, and guarantee the payment of the same without demand or notice of non-payment by the makers. Given under my hand and seal the 28th July, 1866. (Signed) C. S. Meng, [L. S.]"

The execution of the note and guaranty were admitted, but the defendant administrator interposed two defences : first, that William J. Keenan, in his life-time, and his administrator after

his death, were negligent in pursuing the remedies available and in not pushing a suit begun by William J. Keenan in his life-time against the original obligors on the note, St. Clair and Hughes; and, second, the statute of limitations.

Upon the trial "the defendant offered a witness to show negligence on the part of plaintiff and his intestate in failing to demand payment of the makers, and in not notifying defendant or his intestate of non-payment. Judge Witherspoon ruled the testimony to be irrelevant, as the guaranty waived demand and notice of non-payment. The defendant's attorney then offered to put in evidence the record of a judgment obtained by William J. Keenan in his life-time against the makers of the note, refusing to include a bundle of papers filed therewith, consisting of proceedings by the plaintiff Keenan for renewal of the execution in the case, which after contest was renewed. Plaintiff's attorney objected unless the whole of it was admitted together. The judge ruled that if the defendant could show by the record any positive act by the plaintiff or his intestate, he would admit it in evidence; but if it was designed to prove mere "negligence of a passive nature" on the part of the plaintiff or his intestate, he would not admit the record, as for that purpose it was irrelevant and inadmissible. He also overruled the defence of the statute of limitations. The plaintiff had a verdict, and the plaintiff entered up judgment and execution in the form usual against administrators, viz., "*de bonis testatoris, si vel non, de bonis propriis,*" as to costs.

The defendant appeals upon the following grounds of alleged error: "I. In holding that the statute of limitations was not a bar to the action. II. In holding that the defendant could not prove *laches* and negligence of plaintiff and his intestate in pursuing the remedy against the principals, resulting in irreparable injury to his intestate's estate, in discharge thereof under the guaranty and rejecting evidence offered for that purpose. And will move the court on the errors to set aside the judgment and dismiss the complaint under the first exception; and failing that, to set aside the judgment and order a new trial under the second exception."

First. As to the point that the guarantor was discharged from

liability for want of due diligence on the part of the assignee in pursuing the original obligors on the note. The single bill was not negotiable—was assigned for value after due, and its payment guaranteed in absolute and unconditional terms "without demand or notice of non-payment by the makers." It is quite clear, therefore, that the guarantor had no right to demand notice of non-payment, as is necessary in the case of an ordinary indorsement of a promissory note. Brandt, on *Suretyship and Guaranty*, section 172, says: "The rule that no notice of the principal's default need be given in order to charge the unconditional guarantor of an existing demand, is specially applicable to the guaranty of a debt made after the debt is due. In such case the principal is in default when the guaranty is made, and the reasons requiring notice do not apply," &c. Besides, in this case demand and notice were dispensed with in the guaranty itself.

But it is insisted that the contract of guaranty is in its nature collateral and secondary, and involves necessarily the condition of due diligence in the collection of the note against the original obligors. It is true that in this case the guaranty was not made to the original payee at the time the note was given, and in that sense may be regarded as secondary; but it was entered on a single bill overdue and in its terms was absolute and unconditional, and as to the assignee (who may have purchased the note alone upon the faith of the guaranty), it was really primary. There does seem to be some conflict in the authorities as to whether, under such a guaranty, it is necessary, in order to maintain his suit, for the obligee to show greater diligence than is required in the case of an ordinary surety who signed with the original debtor. But without going into the argument it is enough, as we conceive, to say that in this State the precise point was decided in the case of *Foster & Judd* v. *Tolleson*, 13 *Rich.*, 32.

That was a case precisely like this. The action was on a guaranty in the following words: "I assign the within note to Foster & Judd, and guarantee the payment thereof for value received." This was written on a single bill or note under seal then past due. The recovery was resisted on the ground of want of due notice to defendant of non-payment, and of proper diligence on the part of plaintiffs; and it was held that "when the

assignor of a sealed note past due absolutely and uncondition-
ally guarantees its payment, he will not be discharged from lia-
bility by the failure of the assignee to give notice of non-pay-
ment or to sue the maker of the note," &c. In delivering the
judgment of the court Judge O'Neall said: "The question pre-
sented in the first ground is, whether the defendant was entitled
to notice of non-payment. It was clear he was not. The gua-
rantee was absolute and unconditional, on a sealed note, which is
unnegotiable and was after it was due. This very question was
made and decided (*The Bank* v. *Hammond*, 1 *Rich.*, 285), that
the guarantor of a bond (which in all respects is like a single
bill except that it has a penalty) was not entitled to notice of non-
payment. So, too, that case decides the second ground against
defendant; for it rules that the guarantor would not be dis-
charged from his liability on the supposed *laches* of the obligee,
if there was no extension of time to the obligor, which bound
the obligee, as by a valid contract," &c.

In the case at bar it was not claimed that the obligee had
extended the time to the obligors. On the contrary, it appeared
that he had sued them to judgment, and the execution thereon
had been renewed. There was no allegation as to the condition
of the original obligors as to their ability to pay, or of any want
of due diligence except of "a passive kind"—indulgence. See
*Carson* v. *Hill*, 1 *McMull.*, 76; *Benton* v. *Gibson*, 1 *Hill*, 56.

Second. As to the statute of limitations. Both the original
note and guaranty were given before the adoption of the code (in
1870), which changed the law upon the subject of the statute of
limitations, and therefore the question must be determined by the
law as it stood before that time. The old statute of 21 James I.,
our statute of limitations down to the code, imposed limitations
on the different actions by name—that "all actions of debt
grounded upon any lending or without specialty, all actions of
covenant," &c. The statute imposed no limitation on an action
of debt upon a specialty, but it did limit an action of covenant,
and the question is whether this is an action of debt on specialty
or of "covenant." All the old forms of action are now abolished,
but we suppose the question must be considered now according
to the nature of the obligation. Under the old practice would

this action have been "covenant" or "debt on a specialty" or bond? It is remarkable that there is so little in our reports upon the subject, as technical "covenants" and "bonds" are both under seal. But it seems to us that a contract under seal to guarantee the payment of a note under seal, must, as to the time it may run, be construed to be of the same character as the note which it guarantees; that is to say, the note under seal being a specialty and exempt from the operation of the statute of limitations, the guaranty of the payment of that note being under seal is also a specialty and exempt from the statute, just as if the guarantor were another signer and surety.

The exact point that a guaranty under seal, of a single bill under seal, is a bond and assignable as such under the act of 1798, was decided in the case of *Folk* v. *Cruikshanks* (and in a note that of *Waring* v. *Cheeseborough*), 4 *Rich.*, 243. In the first case cited Judge O'Neall said: "This is beyond all doubt a debt by specialty, and that is a bond. That it is payable upon a contingency to arise out of the default of another, can be no objection, if, as the declaration avers, that contingency has happened; for then it becomes absolute, fixed, and certain. The case of *Cay* v. *Galliott*, 4 *Strob.*, 282, is conclusive against defendant." And in the case in the note it is said: "The legal effect of the guaranty is to make the guarantors collateral obligors in the bond. They undertake, if the first obligors do not pay, that they will. This makes them, in the event of non-payment, the same as sureties. Their guaranty is part of the bond, and must pass under the subsequent assignment. The assignee may maintain an action in his own name against the obligors of the bond, and why not against the guarantors? It is their bond as well as that of the first obligors. It is true that if the contract of guaranty was independent of the bond, then the guarantors would not of necessity be liable to the same remedy; but when it refers to the bond, and adopts it as the contract, it is the same thing as if the defendants had executed a collateral bond to secure the payment. The guaranty here is, in legal effect, the bond of the defendants to secure the payment of the bond assigned to the assignee," &c.

We think it follows conclusively from the guaranty being a

specialty, a bond, that the action on it, according to the old forms, was debt on specialty and not an action of "covenant," and therefore the statute of limitations is not applicable.

The question as to the proper form of the judgment and execution has never been ruled upon by proper authority below, and therefore is not before this court in such manner that we can consider it.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.